Thompson *v.* Gilman.

## OTIS THOMPSON *v.* JOHN GILMAN.

When the jury, in an action of ejectment, have established the fact that the deed, under which the defendant claimed title, was fraudulent and void, and that the defendant was a party to the fraud, the defendant is not entitled, on a declaration for betterments, filed under the statute, to recover payment for the improvements which he has made upon the premises.

Thompson *v.* Gilman.

In such case the defendant in the suit for betterments is entitled to prove, in that suit, by the record in the action of ejectment, that such was the finding of the jury.

And the plaintiff in the suit for betterments is not entitled, in that suit, to give in evidence any facts, which tend to show that such deed was not fraudulent,—that matter having become *res adjudicata* by the verdict in the former action.

Neither is he entitled to give in evidence any facts, which tend to show that the plaintiff in the action of ejectment had no title to the premises in question.

THIS was a declaration for betterments* based upon a previous recovery by the present defendant, in an action of ejectment in his favor against the present plaintiff.† Plea, the general issue and trial by jury.

The plaintiff offered in evidence a deed from Moses Norris to himself, dated and acknowledged the 13th of March, 1830, and recorded the 14th of the same month, conveying all the lands which the said Norris owned in the second division of lands in Derby, in the county of Orleans, drawn to the original right of Josiah Strong, with all the privileges, &c.

The piece of land in question, which was included in said deed, contained about seven acres, and the said Thompson introduced evidence tending to show that said piece of land was not worth more than $100 when he entered into possession under his deed,

---

*Under the statute of 1820, Slade's St. 182, extended by statute of 1834, Thomp. St. 38, and substantially re-enacted in Revised Statutes, p. 216. c. 35, § 15, in these words; " After final judgment, in an action of ejectment, ' in favor of the plaintiff, if the defendant has purchased the lands recovered ' in such action, or taken a lease thereof, or those under whom he holds have ' purchased a title to such land, or taken a lease thereof, supposing at the ' time of such purchase such title to be good in fee, or such lease to convey ' and secure the title and interest therein expressed, such defendant shall ' be entitled to recover of the plaintiff in such action the full value of all ' improvements made upon such land, by such defendant, or those under ' whom he claims, in the manner hereinafter provided."

†See the report of that case,— *Gilman* v. *Thompson*, 11 Vt. 643.

and that he had put on to it permanent improvements, which cost $1000, and that said improvements were, at the time of trial, worth $785.

The defendant then offered in evidence a transcript of records in the county and supreme courts in said county, showing that said land had been attached and set off on execution in his favor against the said Moses Norris and others, and that afterwards this defendant commenced his action of ejectment against the said Thompson, for the possession of the same; that the question submitted to the jury, on the trial of that case, was, whether the deed, now offered by this plaintiff, and under which he then claimed title, was fraudulent and void, as against creditors, or not; and that the jury, by their verdict, found that said deed was fraudulent, and that said Gilman should recover the seizin and possession of said land, notwithstanding the said attachment and levy were subsequent to the execution of said deed. To the admission of which record, as evidence, the said Thompson objected; but the objection was overruled, and the record admitted; to which admission he excepted.

The said Thompson then offered evidence tending to prove that the notes signed by the said Moses Norris and others, and on which the said attachment and levy were predicated, were not due until a year after he received his said deed; that David Norris, (son of Moses Norris) owed the said Thompson $100, which claim the plaintiff transferred to Moses Norris in part payment for said land, and which claim the said Moses subsequently discharged; that said David Norris was bankrupt, and had absconded when said deed was executed; and that, previous to the execution of said deed, Norris endeavored to prevail on Gilman to take said land, in part or whole discharge of the demands upon which he afterwards attached the premises, but that Gilman then refused; to which evidence the defendant objected, and it was rejected by the court; to which the plaintiff also excepted.

*E. Paddock* for plaintiff.

The statute of frauds, under which Gilman obtained his judgment in the action of ejectment, though salutary in its effects in society, must unavoidably operate occasionally with great severity

upon the purchaser; hence courts have directed jurors to examine "the motives of purchasers with care, and see whether the purpose and intent of the defendants were corrupt and fraudulent, their motive dishonest, and the object fraudulent,"—*Brooks* v. *Clayes et al.*, 10 Vt. 42,—or whether the making a good bargain for themselves was the inducement to make the purchase; and if the latter, it was no breach of the statute.

I take it we are bound in this case, as in all others involving a penalty, to impute charitable motives for transactions, unless the contrary appears; and here circumstances are developed, which go to rebut the presumption that the object of Thompson's purchase was to prevent the collection of Gilman's debt. 1. He knew Gilman had refused the land. 2. By purchasing the land he secured and saved $100, which the son of Moses Norris owed him, and which, otherwise, would have been lost. 3. Thompson immediately erected a mill on the premises, and we may well presume the intention of erecting a mill an inducement. 4. He would never have put so much property upon hazard, had he entertained a doubt as to the validity of his title. The question then returns, did Thompson *suppose*, at the time he took his deed, that his title was good in fee? We think there can be no rational doubt of it. 5. It is not presumable, that Thompson bought to defeat a debt not due under a year after.

But it is said that all claim to betterments is cut short by the finding of the jury. We admit that the jury wrongfully found the deed fraudulent in law, and we have paid the full penalty of the act, in the forfeiture of our land. 11 East 180. We ask not to have the former decision reversed, but, under favor of the statute, we ask to be protected in the earnings of our labor, since the execution of our deed; and this will do no injustice to Gilman, inasmuch as the law secures to him, ultimately, all that his land would have been worth to him without such improvements.

We need not be told that the record, pleaded in this case, destroys the deed, or its operation upon the title of the land, so far as it respects the creditors of Moses Norris, for such has been the decisions of our courts. But the deed was valid upon the face of it, and conveyed the land, if Norris had had no creditors, and was a

Thompson *v.* Gilman.

perfect deed to every intent and purpose, and valid, when Thompson went into possession, and by it the absolute fee of the soil was in him, and he was thereby a freeholder, until the judgment came ; and then sufficient for the day was the evil thereof. Though by the law his deed is dead, yet there is a redeeming spirit in the betterment act, under favor of which he now stands in court. *Gaige et al.* v. *Ladd,* 5 Vt. 268 ; *Brown* v. *Storm,* 4 Vt. 44.

*Smalley & Adams* for defendant.

1. The plaintiff, having taken a deed of the premises mentioned in his declaration from Norris, and gone into possession of the same under it, for the fraudulent purpose of defeating the rights of Norris' creditors, is not within the spirit of the act of 1820, in relation to betterments. If the deed, under which the plaintiff claimed title to the premises, and under which he entered, was made by Norris, and accepted by the plaintiff, for the fraudulent purpose of defeating the right of Norris' creditors, it is difficult to understand how it can be said that the plaintiff purchased, supposing that he had thereby acquired a valid title. In *Brown* v. *Storm,* 4 Vt. 42, the court, in commenting upon this statute, say, that it was made to give relief in those cases where a person has honestly and innocently entered into possession, supposing he had purchased a good title ; and we are not aware that the principle there laid down has ever been doubted or denied.

2. The record of the recovery in the case of *Gilman* v. *Thompson,* and the grounds upon which the recovery was had, were properly admitted as evidence in this case. Indeed, without this species of evidence there could have been no foundation for the plaintiff's claim.

The opinion of the court was delivered by·

HEBARD, J. The principal question in this case, and the one upon which the case must turn, is, whether the plaintiff, in legal contemplation, could take a fraudulent deed, and still, in the language of the statute, "suppose, at the time of such purchase, such title to be good in fee." The fact that the contract for the purchase

of the land was fraudulent has been found by the jury, and that point cannot be farther litigated.   It was the *very  fact*, so the bill of exceptions finds, upon which' the action of ejectment was made` to depend. ˙ And this fraud, too, must have been of that affirmative character, that the plaintiff cannot  plead ignorance of the facts, or of  the  consequences,—otherwise,  the  jury  would  not have  been warranted in returning the verdict that they did.   This point having been settled and established by the jury, it is difficult to understand how  the plaintiff  could  have supposed that  he had,  at the time of the purchase, "a good  title  in  fee," when the  very  contract  by which he attempted to hold the land, contained the seeds of its own dissolution.

The plaintiff complains that the court excluded certain facts that he  offered  to prove.   The exceptions do not state the  purpose for which those facts were offered, but  it is  to be presumed  that the object was  to satisfy  the jury  that he  purchased the land in  good faith, and without any intention of injuring any one.   All that would  have been very proper  in the action of ejectment,  and, if he had succeeded in satisfying the jury that he had no such fraudulent intent, that must of course have induced a different  verdict, as that was the very  fact in issue.   But the jury have found  the fact the other  way,  and it  has  become *res  adjudicata ;*  and  now to admit that proof  and try the same  question over again, between the same parties, would be contravening a well settled principle of law.

˙  The plaintiff also objected  to the  admission of the record  of the action of ejectment ; but the introduction of that record was  essential to his recovery ; and without it *I do  not see how  he  could* recover ; for this proceeding for betterments cannot  be sustained· until after there shall have  been rendered a final judgment in the action of ejectment ; and the record  in that action  must be the only legal evidence.

The facts, then, which were offered by the plaintiff, had no other tendency than to show, that, in the purchase of said land, by the plaintiff from  Norris, there was no fraud,  and that, there  being no fraud  in that deed, the defendant is without title  to the land.   In *Brown v. Storm,* 4 Vt. 37, which was a declaration for betterments,

in which there were several counts, the court say, "that no damage can be assessed upon those counts, which are founded on an alleged want of title in Storm." If damage cannot be assessed upon a count setting forth a want of title in the defendant, it would follow, that the plaintiff could not be permitted to introduce evidence to prove the same fact, when it was not alleged in the declaration. The bill of exceptions, in this case, refers to the bill of exceptions in the ejectment suit; and the exceptions in that suit state that Gilman introduced such evidence as enabled him to avoid Thompson's deed for fraud, and to recover a verdict; and upon this it is argued, that, for any thing that appears in that bill of exceptions, the proof showed the deed to Thompson to be a voluntary deed, given without consideration, and therefore void in law as to the creditors of Norris; and, that being the case, that it would not follow, necessarily, that Thompson was *particeps criminis*, in the fraud, and, therefore, that this testimony should have been received. But this reasoning all vanishes when we look at the facts that he thus offered to prove. Among other facts, which Thompson offered, was the fact that he paid a full and adequate consideration for the deed, which in part consisted of a demand against David Norris. How much more he paid does not appear, but he gave evidence on the trial tending to prove that the land, when he bought it, was not worth over one hundred dollars. This, then, shows that Thompson considered that he was paying a full consideration for the land; and that being so, the deed could have been avoided for fraud, only upon showing that Thompson was a partaker of the fraud.

But it is said that it will be a great hardship for Thompson to lose these improvements and erections, which he put on this land in good faith. Whatever *hardship* a legal result in this case may work upon the plaintiff, we may equally regret with others, and would gladly relieve him, if in our power to do so without visiting a similar hardship upon the other party. It is a maxim of the law, that every man shall bear his own misfortunes, and suffer for his own faults. If, by his own fault, the plaintiff has so intermingled his own property with that of others, that it cannot be distinguished,

and separated; it is either the fault or the misfortune of himself, and upon him the law visits the loss. The law gave the defendant the right to levy his execution upon this land thus fraudulently obtained. The law has made no provision for levying upon the land without the improvements, and by thus levying he has paid an equivalent for the whole land and improvements; and by compelling him to pay to the plaintiff the value of the improvements, we should be visiting upon him the same hardships that the plaintiff seeks to avoid. The same hardship might overtake a man who should become a fraudulent purchaser of personal property. The property, by keeping, might be very much increased in value, and still be liable to be attached and held by the creditor of the vendor, and the purchaser could have no remedy or relief for his expense in keeping the property.

A defendant in an action of ejectment, after final judgment against him, may, as a matter of statutory right, file his *declaration* for *betterments;* and, after the declaration is filed, it stands to be tried and determined by the law applicable to such cases. *Gaige et al.* v. *Ladd,* 5 Vt. 266.

Gilman had established his right to recover, by showing Thompson's deed to be fraudulent. And, upon the trial of the declaration for betterments, to try that question of fraud over again would be the same as to try the recovering party's title over again, when it depended upon other facts. The plaintiff in an action for betterments cannot proceed upon the ground of a want of title in the defendant. And, in this case, to allow the plaintiff to go into the showing that his deed was *not fraudulent* would be allowing him to dispute the correctness of the former recovery.

                    Judgment of the county court affirmed.