# ORLEANS COUNTY.

## August Term, 1839.

Present, Hon. STEPHEN ROYCE,
 " JACOB COLLAMER,
 " ISAAC F. REDFIELD,   *Assistant Justices.*
 " MILO L. BENNETT,

---

## John Gilman *v.* Otis Thompson.

A court, having jurisdiction of the subject matter, obtains jurisdiction of the person by service of process on the person or the attachment of his property, within the jurisdiction. If jurisdiction be had by the attachment of property, *irregularity*, in the proceedings for giving personal notice, does not render the proceedings void.

When a judgment has been rendered and execution thereon levied on land, and a title thereby vested, such levy is not vacated by an unauthorized alteration of the officer's return on the original writ.

Quere—Whether an alien can take land by levy of an execution, even so. as to divest the former owner? But the mere fact that a man resides in Canada and has for many years, is not, alone, sufficient to find him an alien.

If, by the record and execution, it appears that the debtor resides without this state, and the record shows no attorney, the officer is excused from calling on him to select an appraiser.

A description in a levy, by reference to land heretofore conveyed, is sufficient, unless it appear that this cannot be made certain by record.

This was an action of ejectment for eight and one half acres of land in Derby.

Plea, general issue, and trial by jury.

Upon the trial in the county court, the plaintiff claimed · title to the land by virtue of an attachment on mesne process ·

and a levy of an execution in his favor against Moses Norris, Mesheck Norris, and David Norris, and, for the purpose of showing the source from which the defendant claimed title, gave in evidence a copy of a deed from said Moses Norris to the defendant, dated 13th of March, 1830, conveying the land in question, which was admitted without objection.— The plaintiff also proved the defendant to have been in possession of the land at the time of the service of the original writ in this action, and offered in evidence the copy of the original writ, and the officer's return thereon in his favor, against Moses Norris, Mesheck Norris and David Norris, and of the record of a judgment in that suit, rendered against said defendants, by default, and without any other notice, except the publication of the usual order, in cases of the defendant being out of the state.

The defendant objected to this evidence.

It appeared by the testimony before the court, that after the judgment and levy, and the first trial in this action, the plaintiff's attorney, without leave of court, but in an open and public manner, and in presence of the officer serving the writ, altered the word *defendant* to *defendants,* in the return of the officer on said writ, and at the end of the original return added, "*the defendants having removed without this state, and having no known agent or attorney within the same,*" or words to that import. The court decided that this alteration, in the manner in which it was made, did not avoid the process or judgment. It appeared, further, on inspection of the writ and return aforesaid, that the writ issued in the usual form of an attachment against the three defendants, above named, and that, in the writ, they were described as residing at Moira, in the state of New York. The officer's return on the writ was, that he served the same by attaching certain real estate in Derby, described in the return as the estate of the "defendant," (in the singular number,) and without specifying which of the defendants; and that he left a copy of the attachment, &c., in usual form, at the town clerk's office, in Derby. The defendants contended that this return showed no legal service upon eithe r of the defendants, and that the after proceedings were w holly void, for the reason that it should appear, by the o fficer's return, to which defendant this estate was claimed to have

ORLEANS,
*August*,
1839.

Gilman
*v.*
Thompson.

belonged, or whether to all or only one, and also, that it should appear by said return that said *defendant* or *defendants*, whichever the service was attempted to be made upon, resided without the state, and had no known agent or attorney therein, at the time of such service, and that, then, if the officer intended, or would, make service upon all the defendants, he must leave at said town clerk's office, in addition to the first copy, one other copy for each defendant. But the court overruled the objection, and admitted the evidence.

The plaintiff then offered in evidence a copy of an execution issued on said judgment, and a levy of the same on the lands in question, subsequent to defendant's deed, as the estate of said Moses Norris. To the admission of this evidence, the defendant objected, for the reason that the levy in question was defective and insufficient to pass Moses Norris' title to the defendants ;—

1. That the description of the estate was indefinite and uncertain, both as to the land intended and as to Moses Norris' interest therein, which description is as follows: "a certain piece of land, with the appurtenances thereof, situated and being in Derby, in said county of Orleans, containing eight and one half acres, be the same more or less, and bounded and described as follows, viz. beginning at the north east corner of the second division lot number 4, drawn to the original right of Josiah Strong, and lying in great lot number 63; thence running south, on the east line of said lot No. 4, forty seven rods; thence running west, parallel with the said lot line, 34 rods; thence north parallel with the said lot line 47 rods; thence east 34 rods to the bound begun at, (excepting about one acre and a half, sold by Zera Barber to Abel Wilder, and now owned by Harry Perkins,) the proper estate of Moses Norris, one of the within named debtors in fee."

2. That the officer applied to a justice to appoint appraisers, when it did not sufficiently appear that the debtor and creditor had had an opportunity to choose appraisers, and had failed so to do, and that no sufficient reason was given for not applying to them. The part of the levy here objected to follows the description of the land, and is in the following words;—"and the said parties, their agents and attorneys, neglecting to choose appraisers to appraise the estate

aforesaid, I applied to Portus Baxter Esq, a justice of the peace," &c.   The court overruled the objections and admitted the evidence.

The plaintiff then introduced such evidence as, under the charge of the court, enabled him to avoid the defendant's deed for fraud, and to recover a verdict.

In the course of the trial, it appeared that the plaintiff had had his permanent residence at Stanstead, Lower Canada, and was in business and had been a house-holder there for some years previous to the commencement of this action, but how long, did not appear.   There was no testimony tending to show that the plaintiff had ever resided in any of the United States, or that his allegiance was not exclusively owing to the king of Great Britain.   The defendants contended to the jury, and requested the court to charge, that if they found the fact that the plaintiff was an alien, resident in the province of Lower Canada, he could not recover in this action, even upon the general issue.   But the court gave no instructions on this point; to which omissions to charge, and to the above decisions of the county court, the defendant excepted.

The defendant also moved, in arrest of judgment, the same cause, which motion was overruled ; to which the defendant also excepted.

*E. Paddock*, for defendant.

It was said in the court below, that an *alien* can take and hold land, until he is found to be an alien by *inquest of office*. Inquest of office may be had  between  suitor and suitor  as well as when called  for by the state; if a criminal is thought to be lunatic, the judge satisfies his conscience on the subject by *inquest of office* ; if a criminal stands mute, the cause must be sought out by inquest of office ; and, in England, it would seem, if one of two claimants, to real estate, suspected the other to be an alien, he might have inquest of office to determine that fact.

An inquest of office is an inquisition of jurors, either summoned by the sheriff for the purpose, or drawn from the panel in court: they find the fact by inspection, or from the evidence submitted to their consideration ; but, in this state, in actions of ejectment, the defendant has a right, under the general issue, to show the fact of the plaintiff being an alien,

if residing in the states, and the defendant may do the same, and an inquest of office is never necessary, even where both parties are resident in the state; but in this case, we contend, the court are bound to take notice that the plaintiff is an alien, and not render judgment in his favor, for he sets himself up as a resident of another realm, and, therefore, a subject of another government, and nothing to show that he was ever in the United States.

The law is well settled, that aliens, until naturalized, cannot hold real estate here or in any of the states. 1 Shep. T. 232, note 12. Kent's Com. 46 and 54. And, in order to be naturalized, they must comply with the various statutes of the United States. 1 Camp. R. 482.

It is true, that, in some instances, aliens may hold lands without being naturalized, but it is only by operation of the treaty with Great Britain of 1794. But the treaty only applies to titles then held by aliens, (Kent's Com. 60,) and not to titles acquired subsequently.

1. It appears that the plaintiff's attorney, after judgment in this case, and before final trial, mutilated the record, and, we contend, he thereby destroyed it. 8 Vt. R. 406.

2. The service of the writ was not in conformity to the statute.

3. The record ought so show why the officer applied to a justice, and no application to the parties to agree on appraisers.

4. The description of the land levied on ought to be so definite as to enable another officer to put the plaintiff in possession.

*Maeck & Smalley and E. G. Johnson*, for plaintiff.

The opinion of the court was delivered by

COLLAMER, J.—The first question is, was the judgment, which the plaintiff recovered against Norris, void, when rendered? To render the proceedings of a court void, (not erroneous, or voidable,) the court must be without jurisdiction, either of the subject matter or the parties; and, in such case, the court, the officer issuing execution and the sheriff who serves it, are all trespassers, and no subsequent proceedings can cure the evil. Even the appearance of the

ORLEANS,
August,
1839.

Gilman
v.
Thompson.

parties and submitting to the court will not confer jurisdiction. That the court had jurisdiction of the subject matter of that judgment, that is, of such a debt to such an amount, there is no doubt. Had they jurisdiction of the *defendants* in that suit? Courts obtain jurisdiction over the persons of defendants, who have no personal exemptions, by the service of process either on their bodies or property, within the jurisdiction of the court. The attachment of property is *one* thing, the notice to the party is *another*. They are different commands, and the officer has distinct duties to perform for these purposes. The circumstance that both commands are, in this state, contained in the same process, does not alter the case. If the officer take personal property and return that he has so done, or attach real estate and leave a copy with the town clerk, he has made an attachment, and the court has jurisdiction of the party. If the return also shows notice, it is well ; but if his return shows the officer has not done what the law requires he should do, for that purpose, it is merely cause of abatement.

If the defendant does not appear, and the return does not show personal service, the court may permit amendment of the return, suffer personal notice to be otherwise shown, order personal notice or publication, or take any other course for notice, recognized by law, the court having, already, jurisdiction. This principle is fully recognized in *Newton* v. *Adams and Shepherd*, 4 Vt. R. 444.

In this case, the return stated that the officer had attached certain lands, as the property of the defendant, and left a copy in the town clerk's office. This gave the court jurisdiction of the defendant party. All the rest is matter of notice, and there is nothing tending to show that the land was not the property of the defendants. The court published notice and gave judgment, which judgment is not void.

After the plaintiff had recovered a judgment and taken execution thereon, and levied the same on the land of one of the defendants and commenced ejectment therefor, his attorney altered the return on the original writ. The alterations were in no part of the return which made the attachment and gave jurisdiction to the court, but only in that which related to notice. This was unauthorized, but what was its effect ? The judgment and levy gave the plaintiff a title to

the land.　This title cannot be vacated and he divested of his freehold by an alteration or *destruction* of the original writ, any more than a man could lose his farm because his attorney had, unauthorizedly, burnt up his deed.　The writ was no part of the record, nor was its production necessary to show the plaintiff's title.　When a judgment is recorded, a copy of that judgment is all that need be produced.

　An alien may purchase land and hold the same as against the grantor, who is *estopped by his deed*; and, if a forfeiture or escheat is produced, it is to the state, and for the state alone to assert.　But whether an alien can acquire any right by mere operation of law, without a deed from the grantor, is another question.　But even this question does not properly arise in this case.　All the evidence was, that the plaintiff had, for many years, resided in Canada.　Now, this was as entirely consistent with his being a citizen of this state as otherwise, and, therefore, could not justify the jury in finding him an alien.

When the record shows, as in this case, that the debtor resides without the state, and shows no attorney, the officer is, of course, excused from calling on him to choose appraisers.　3 Vt. R. 394.

The degree of certainty, in the description of land in the levy of an execution, has been frequently considered.　It needs to be no more than certainty to a common intent, and the return should be read in the exercise of ordinary discernment, and with reference to this rule of certainty.　In this return, "running west parallel with *said* lot line" means parallel with that line of said lot which runs in a westwardly direction.　After running round a tract, it excepts about one acre and a half, sold to Abel Wilder.　This must, *prima facie*, mean sold by deed.　And, as all deeds are here recorded, that is sufficiently certain which may be so made by record. This is sufficicient, until it be shown that a reference to the record still leaves it uncertain.　*Maeck* v. *Sinclair*, 10 Vt. R. 103.　11 Mass. R. 517.

Judgment affirmed.