MARY I. BROPHY'S (dependent's) CASE.

Suffolk.   May 11, 1951. — June 29, 1951.

Present: QUA, C.J., LUMMUS, WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Workmen's Compensation Act*, Agreement for compensation; Time of
    injury; Dependency; Procedure: claim by dependent.

A recital in an agreement for the payment of compensation to an injured
    employee under the workmen's compensation act, "Date of Injury:
    Left . . . [the employer on a specified date]" meant that the specified
    date was the date of injury.
A statement of the date of injury in an agreement for the payment of
    compensation to an injured employee under the workmen's compensa-
    tion act conclusively established that date for the purposes of a sub-
    sequent claim made by the employee's husband for compensation as
    her dependent following her death as a result of the injury.

CERTIFICATION to the Superior Court of a decision by the
Industrial Accident Board awarding compensation under
the workmen's compensation act.

The case was heard by *Cahill*, J.

*J. M. Russell*, for the insurer.

*L. S. Locke*, for the claimant.

COUNIHAN, J.   Mary I. Brophy, hereinafter called the
employee, sustained injury resulting in a pulmonary condi-
tion while in the employ of the Sylvania Electric Products
Inc.   As a result of a claim for compensation by her, she
and the Arrow Mutual Liability Insurance Company, here-
inafter called the insurer, on October 17, 1947, entered into
a written "Agreement as to Compensation."   This agree-
ment was filed with the Industrial Accident Board, herein-
after called the board, and was approved by it on August 16,
1948.   It was on a form prescribed by the board.   Under
this agreement the insurer paid the employee compensation
from April 1, 1947, to December 14, 1948.   The parties,

it reads so far as pertinent, "have reached an agreement in regard to compensation for the injury sustained by said employee and submit the following statement of facts relative thereto: Date of Injury: Left Sylvania 8/6/45 Date disability began: 4/1/47 Nature of injury: The parties agree that the employee has been totally incapacitated since April 1, 1947, because of a pulmonary condition, but are unable to agree as to its cause or correct diagnosis. The insurer agrees that the employee is entitled to payments under G. L. c. 152 . . . payments to begin as of April 1, 1947, and to continue."

The employee died on December 11, 1948, and her husband instituted this proceeding to establish a claim for compensation as a dependent. The proceeding was heard by a single member of the board under G. L. (Ter. Ed.) c. 152, §§ 7 and 8. The member awarded compensation and the reviewing board approved and adopted the findings and decision of the single member, which thus became the findings and rulings of the board of review. Upon certification to the Superior Court, the judge decreed that the employee on August 6, 1945, received personal injury which caused her death and awarded compensation to her husband, the claimant, as a dependent, together with costs and counsel fees. The case comes here upon the appeal of the insurer from this decree.

At the hearing before the single member it was agreed that the employee married the claimant on July 1, 1945, and that they lived together after the marriage; that the date of termination of the employment was August 6, 1945; and that there was causal relationship between her death and the condition for which payments were made under the agreement as to compensation.

The single member found as a fact that the claimant "was a dependent as he was living with . . . [the employee] at the time of her injury and death."

At that hearing the insurer contended and offered evidence to prove that the injury sustained by the employee was on a date other than August 6, 1945, and on a date

prior to her marriage to the claimant. The single member ruled, "I am of the opinion and find that I have no right under the law to change the terms of this agreement in so far as the date of injury is concerned, and I do not find as a fact that there was a mutual mistake when these agreements were entered into." This ruling was based upon G. L. (Ter. Ed.) c. 152, § 6, as amended by St. 1945, c. 347.[1]

The question for us to decide is: Does the recital in the agreement as to compensation, "Date of Injury: Left Sylvania 8/6/45," conclusively establish that day as the time of the injury and thus bar the insurer from proving or attempting to prove that the injury was actually sustained on a day prior to the marriage of the employee?

We are of opinion that "Left Sylvania 8/6/45" following the words "Date of Injury" should be construed to mean that August 6, 1945, was the day that the employee suffered injury. Otherwise this phrase has no meaning and serves no purpose. It is fair to assume from other matters in its content that this agreement was prepared and drafted by the insurer, with an honest purpose to give the board all information surrounding the injury.

One of the most vital factors in determining to whom and by whom compensation is to be paid under the statute is the date on which the injury occurs. The date of injury controls the time for filing claims, the amount of compensation to be paid, the coverage of an insurer, *Crowley's Case,* 287 Mass. 367, 370–371, and more especially, as in this case, dependency, for in order to recover as a presumed dependent a husband must, at the time of the injury as well as at the time of the death of the employee, be married to and living with the employee. *Beausoleil's Case,* 321 Mass. 344,

---

[1] If the insurer and the injured employee reach an agreement in regard to compensation, a memorandum thereof shall be filed with the department, and, if approved by it, the memorandum shall for all purposes be enforceable under section eleven; provided, that as to the average weekly wages therein contained, the department or a member thereof may, on petition by the employee, insurer or insured, change such average weekly wages if the facts found so warrant. Such agreements shall be approved by said department only when the terms conform to this chapter."

346–348. G. L. (Ter. Ed.) c. 152, § 32.(b).[1] Undoubtedly, the insurer was led to insert August 6, 1945, in the agreement as the date of the injury because of the rule that, where personal injury occurs through the gradual accumulation in the body of harmful foreign matter, the date of termination of employment is accepted as the last day on which such injury could occur, because that is when the accumulative effect of the absorptions renders the employee unable to perform further service. *De Filippo's Case*, 284 Mass. 531, 534. *Crowley's Case*, 287 Mass. 367, 371–372. *Beausoleil's Case*, 321 Mass. 344, 345.

We have assumed in discussing this problem that this proceeding was an adversary one because it involved a hearing before a single member under §§ 7 and 8 of c. 152, a decision of a reviewing board, and certification to the Superior Court under § 11 of c. 152, as amended. But it might just as well have been taken to the Superior Court under another provision of § 11 which provides that "Any party in interest" may present to the Superior Court a memorandum of agreement approved by the board and all papers connected therewith and there shall be no appeal to this court "where the decree is based upon . . . a memorandum of agreement." It would seem that the foundation for the proceeding here was the agreement as to compensation. *Dempsey's Case*, 230 Mass. 583, 586–587. *L'Heureux's Case*, 307 Mass. 177, 179. The statute appears to us to fix definitely the conclusiveness of the agreement. An excellent discussion of the effect to be given an agreement of this nature is found in *Kareske's Case*, 250 Mass. 220, where it was said at page 227, "The insurer paid what was agreed; and it ought not now to be able to raise any question it then forbore to litigate."

In *West's Case*, 313 Mass. 146, at page 153, it was said, "In making and performing the terms of the agreement, the insurer is acting in its own behalf . . .. The responsi-

---

[1] "Section 32. The following persons shall be conclusively presumed to be wholly dependent for support upon a deceased employee . . . (b) A husband upon a wife with whom he lives at the time of her death."

bility for making payments for the ordinary claims for compensation rests upon the insurer, and the acceptance by the employee of payments from the insurer 'shall constitute a release to the insured of all claims or demands at law, if any, arising from the injury.' G. L. (Ter. Ed.) c. 152, § 23." It is unthinkable that if the insurer which provided coverage on August 6, 1945, should later discover that it had no coverage prior to July 1, 1945, the date of the marriage, it could come in and repudiate this agreement after the death of the employee and raise questions of original liability. The purpose of the agreement was to prevent such a situation. *Dempsey's Case,* 230 Mass. 583, 586–587. *DiLeo's Case,* 295 Mass. 568, 571.

But the insurer contends in effect that because the claimant seeks to enforce his rights as a dependent he is undertaking a new and separate proceeding from the claim by the employee resulting in the filing of this agreement. There is no merit to this contention. While it is true that the right of a dependent does not arise until after the death of the employee, it is also true that the right of the dependent to payment originates in the injury and particularly depends upon the date of the injury. Injury and the date of it are not only the common basis of recovery but are the only one upon which an award of compensation to dependents may be founded. It is injury and not death for which compensation is awarded. *Beausoleil's Case,* 321 Mass. 344, 346–347.

There is also no merit in the suggestion of the insurer that there was no evidence to support the single member's finding that the claimant was a dependent. It asserts but does not argue this point in its brief so we need not consider it. *Richmond* v. *Stanzler,* ante, 62, 63–64. It would have been futile to have so argued because of the findings of the board of review and G. L. (Ter. Ed.) c. 152, § 32 (b).

The allowance for costs, attorney's fees, briefs and expenses (G. L. [Ter. Ed.] c. 152, § 11A, inserted by St. 1945, c. 444, as amended by St. 1949, c. 372) is referred to the single justice.

*Decree affirmed.*